## McINTOSH v. CITY OF PITTSBURG.

(Circuit Court, W. D. Pennsylvania. December 19, 1901.)

### No. 16.

1. MUNICIPAL CORPORATIONS—IMPROVEMENT ORDINANCE—NONRESIDENT PROPERTY OWNERS.

Property within the limits of a city, owned by a nonresident, may be dealt with by the city as though it belonged to a resident, and the owner is bound to take notice of an ordinance affecting such property, when it has been duly promulgated as required by law, whether state or municipal.

2. JUDGMENTS—PERSONS CONCLUDED—REPRESENTATION BY MEMBERS OF SAME CLASS.

A judgment of a state court sustaining the validity of a municipal ordinance for the widening of a street, rendered on an appeal taken from such ordinance by property owners affected, as permitted by a statute under which the decision of the court on such appeal is final, is conclusive not only on the parties, but also on all other property owners similarly affected, and who might have become parties, and is a bar to a suit subsequently brought in a federal court by one of such property owners, who is a citizen of another state, to have the ordinance declared invalid.

In Equity. On bill and plea.

Willis F. McCook and Dalzell, Scott & Gordon, for complainant. Clarence Burleigh, J. H. Beal, and Johns McCleave, for respondent.

BUFFINGTON, District Judge. This is a bill in equity, filed by Mary S. McIntosh, trustee, a citizen and resident of Iowa and a property owner on Diamond Street, in the city of Pittsburg, against said city, praying: First, that the city be enjoined from entering upon her premises and appropriating the same for a street; second, that an ordinance of said city, approved January 14, 1899, be decreed to be null and void, because it was not petitioned for by a majority in interest and number of property owners abutting on the line of the proposed improvement To the bill a plea is filed, setting forth: That such ordinance was passed, and thereafter approved, pursuant to authority vested by an act of the legislature of Pennsylvania of May 16, 1891 (Laws 1891, No. 59), section 10 of which is as follows:

"The majority in interest and numbers required for petition to councils shall be fixed as of the date of the presentation of said petition. After the passage or approval of any ordinance for the opening, widening, straightening, extending, grading, paving, macadamizing or otherwise improving any street or alley, notice shall, within ten days thereafter, be given by hand-bills posted in conspicuous places along the line of the proposed improvement, which notice shall state the fact of the passage or approval of the ordinance, the date of the passage or approval, that the petition for the improvement was signed by a majority in interest and number of owners of property abutting on the line of the proposed improvement, and that any

person interested and denying the fact that said petition was so signed may appeal to any court of common pleas of the proper county within sixty days from the passage or approval of said ordinance, and any person interested may, within sixty days from the passage or approval of said ordinance, present a petition to any court of common pleas of the proper county setting forth the facts, whereupon the said court shall inquire and determine whether said improvement was petitioned for by the requisite majority, and if said court shall find that it was not so petitioned for shall quash said ordinance, but if said court shall find that it was so petitioned for it shall approve the ordinance. If no appeal shall be taken as aforesaid, or if the court on appeal shall approve the ordinance, the municipal corporation may proceed with the improvement, and thereafter all parties interested shall be estopped from denying the fact that said petition was signed by the requisite majority of property owners, as required by this act. All assessments for benefits to pay damages, costs or expenses shall bear interest at the expiration of thirty days after they shall have been finally ascertained and fixed, and shall be payable to the treasurer or other proper officer of the municipality."

—That within 10 days after passage of the ordinance the required notice by handbills was given, and on March 14, 1899, sundry property owners, other than complainant, appealed by petition to the court of common pleas of Allegheny county, and denied the petition for the passage of the ordinance was signed by a majority in interest and number of owners of property abutting on the line of the proposed improvement. That after answer filed and hearing, said court made the following decree:

"And now, September 30, 1899, after hearing arguments of counsel on the exceptions to the master's report, and after consideration thereof, the exceptions to report as above stated are sustained, and it is further adjudged, ordered, and decreed that a majority in interest and number of the owners of property abutting on the line of the proposed improvement, the widening of Diamond street, petitioned the city council for the same, and the ordinance passed by councils the 9th of January, 1899, and approved by the mayor the 14th of January, 1899, is hereby approved."

—That on October 3, 1899, certain of the petitioners appealed from said decree to the supreme court of Pennsylvania, which court, on May 21, 1900, quashed said appeal in an opinion reported in 196 Pa. 258, 46 Atl. 429. All of which is pleaded in bar of the bill, and judgment is prayed whether any further answer is required, and dismissal of the bill is asked.

After due consideration, we are of opinion the plea is good, and the bill should be dismissed. It is settled that the legislature may delegate to municipal corporations the power to make, with appropriate sanction, ordinances, and, when duly enacted, such ordinances have the force of laws passed by the legislature of the state; that ordinarily every one whose property is affected by a municipal ordinance is bound to take notice of it if duly promulgated; that form or manner of notice may be prescribed by the legislative department, whether state or municipal, and personal notice is not essential; that a member of a municipal corporation is presumed to be aware of its by-law; and property within the limits of a city belonging to a nonresident may be dealt with as though it belonged to a resident. City of Knoxville v. King, 7 Lea, 445; 1 Dill. Mun. Corp. p. 308, and cases cited; Hellen v. Noe, 25 N. C. 493; Inhabitants of Palmyra v. Morton, 25 Mo. 596. An examination of the opinion of the supreme court cited in the plea shows that that

court held that no appeal lay from the decree of the common pleas. It was there said:

"The jurisdiction of the court below was purely statutory. The legislature might have conferred on councils the right to widen the street without being first petitioned to do so by a majority in interest and number of property owners. It might have stopped just there. But it went further, and not only made the petition a condition precedent, but gave a right of appeal to the common pleas within sixty days by any one interested. The statute, however, gave no further remedy to the discontented property owner. The purpose, doubtless, was to prevent the delay incident to prolonged litigation over a public improvement which touched on the property rights of individuals. Judicial observation has taught us that of which the legislature was not ignorant,—that of all contentions which promote belligerency and bitterness, with their consequent pertinacity of purpose, those which arise from the exercise of the right of eminent domain are the most frequent and conspicuous."

We have, therefore, a finding of fact by a court of competent jurisdiction that a majority in interest and number of owners of property abutting petitioned for the ordinance, and we have a decree by the highest court of the state in which the question could be reviewed approving the ordinance. Such ordinance accordingly stands as the judicially ascertained municipal law of the city of Pittsburg. Knowledge of the passage of this ordinance, as we have seen, must be imputed to the complainant. She takes no step either to appeal herself or to intervene in the petition of other property owners. But other abutting property owners, whose interests are identical with hers, begin proceedings to have this ordinance declared illegal. Without intervention on her part this case went to final hearing, and the validity of the ordinance was judicially decreed by the tribunal empowered to pass thereon. Upon what principle can she now attack such decree in a collateral proceeding? It is clear that the interests of the present complainant and that of the appellants in the common pleas case were identical. It was one common to both as members of a class. Where such common interest exists, one or more of a class may litigate such interest without making all class members parties. Story on Equity Pleadings, cited in Smith v. Swormstedt, 16 How. 302, 14 L. Ed. 942. Such facts constitute an exception to the general rule in courts of equity that all persons in interest must be parties to a bill; and where bona fide bills are filed and litigated by representatives of a class, and the subject-matter of the suit is common to all, the decree binds the entire class as fully as if all were before the court. Smith v. Swormstedt, supra. This well-settled principle of equity procedure has been applied in municipal litigation. A judgment against a municipality or its legal representatives in a matter of general interest to all its inhabitants—for example, respecting the levy and collection of a tax—is conclusive not only upon the municipal defendant, but upon all its inhabitants, though not made parties. Such inhabitant cannot collaterally attack such judgment, or relitigate the subject-matter. Sauls v. Freeman, 24 Fla. 222, 4 South. 525, 12 Am. St. Rep. 190; Clark v. Wolf, 29 Iowa, 197; Gaskill v. Dudley, 6 Metc. (Mass.) 546, 39 Am. Dec. 750; Terry v. Town of Waterbury, 35 Conn. 526; Cromwell v. County of Sac, 94 U. S.

351, 24 L. Ed. 195; Lyman v. Faris, 53 Iowa, 498, 5 N. W. 621; Ashton v. City of Rochester, 133 N. Y. 193, 30 N. E. 965, 31 N. E. 334, 28 Am. St. Rep. 619. In the case in the common pleas of Allegheny county the approval of the ordinance in question was in issue. That such court had jurisdiction both of the subject-matter and of the parties litigant cannot be questioned. The decree of that court approved the ordinance, and judicially established the fact it was the duly-established law of the city. Certain it is that this decree thus adjudging this ordinance valid is final and conclusive upon the parties to that suit. They could not again raise that issue, and in a collateral proceeding question the validity of such ordinance. But the binding effect of the decree extended beyond the immediate parties. The authorities cited are to the effect that not only were the immediate parties concluded thereby, but all citizens of Pittsburg were bound, because they and their interests were represented by the city, and all property holders abutting on the line of the street, because they and their common interests were represented by the appellants. "The judgment of a court of competent jurisdiction will sometimes operate as an estoppel and a former adjudication against persons who were not named in the proceeding, and who were not parties to the record by name. It is enough if they were represented in the action or proceeding which resulted in the judgment, or were entitled to be heard." See Ashton v. City of Rochester, supra, where certain property owners were held concluded by a prior decree establishing the legality of the municipal improvement ordinance again sought to be contested, because, though not parties to the record, their rights were represented by other fellow property owners, whose interests were identical. "The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of all will be properly protected and maintained." Smith v. Swormstedt, supra. To the same effect was the decision in Harmon v. Auditor of Public Accounts, 123 Ill. 132, 13 N. E. 163, 5 Am. St. Rep. 506, wherein it was said:

"The present suit was brought by Harmon and others, also taxpayers and property owners of the town, as representatives of the same class for whose benefit the Pinckney bill was filed. The complainants in this proceeding were represented by the complainants in the former suit, and are therefore bound by the decree therein entered. The remedy in suits of the character here indicated is in the interest of a class of individuals having common rights that need protection, and in the pursuit of that remedy individuals have the right to represent the class to which they belong. The jurisdiction in some respects rests on the principles of a proceeding in rem."

It would seem, therefore, that the questions sought to be raised by this bill are, as against the present complainant, settled by this decree of the court of common pleas, unless the fact that she is a nonresident avails to give her rights other than those possessed by a resident lot owner. We fail to see how that fact can in any way affect the binding and conclusive effect of the decree already made adjudging the validity of this ordinance. Certain it is that as to resident owners of property of her class, who have not appealed,

the decree is a finality. To a bill filed in the state court by such property owner or by the complainant a plea setting up this prior adjudication would be a sufficient answer. We are, however, of opinion the 'rights of a nonresident property owner stand on no higher plane than those of a resident. "The complainant can ask no greater relief in the courts of the United States than he could obtain were he to resort to the state courts. If, in the latter courts, equity would afford no relief, neither will it in the former." Ewing' v. City of St. Louis, 5 Wall. 418, 18 L. Ed. 657. What might have been the rights of this complainant had she filed a bill in this court in advance of the adjudication by the state court, or had she intervened in that proceeding and sought to remove the same, are questions not now before us, and on them we express no opinion. She filed her bill subsequent to such 'decree. Being a nonresident, and the amount in controversy in excess of $2,000, this court has jurisdiction of her bill; but she is met, not by a challenge of the court's jurisdiction, but by a record showing her rights have already been settled by the decree of a court of competent jurisdiction, and that, therefore, this court should not exercise its jurisdiction. Persons, whether resident or nonresident, may have their rights concluded by a decree; and, where they have been once passed upon by a court of competent jurisdiction, no other court, state or federal, will unsettle them by a collateral attack. This is precisely what is sought to be here done. We are of opinion, however, that the plea setting forth a decree of the court of common pleas in which the validity of this ordinance was judicially established is a complete answer to the bill of the complainant. It would be a perversion of the rights of nonresidents and of the jurisdiction, and power of federal courts, if, under the claim of nonresidence, this property owner could again draw in question an issue which has, as against her, been already settled by the courts of the state. There is a time when litigation should close, and, the question here involved having been passed on by the state court, the refusal of the federal to relitigate the issue is in accord with the spirit of that wholesome maxim, "Interest reipublicæ ut sit finis litium."