THE WARDROP COMPANY, INC., Respondent, *v.* FAIRFIELD GARDENS, INC., and Others, Defendants, Impleaded with THE ESTATE OF ISAAC G. JOHNSON, Appellant.

First Department, February 3, 1933.

*John Jay McKelvey,* for the appellant.

*Charles E. Scribner* of counsel [*Rabenold & Scribner,* attorneys], for the respondent.

TOWNLEY, J. This action is brought by plaintiff as the owner of certain land described in the complaint to secure a declaratory judgment to the effect that a restrictive covenant and trust deed affecting such property permits the erection thereon of "a modern, high class, properly conducted hospital for human beings which shall not treat contagious diseases." A declaration is also requested

in the negative that the said covenant does not prohibit the erection and maintenance of such hospital.

The covenant, which is the subject of this suit, reads as follows: " And the said party of the second part for himself, his heirs and assigns doth hereby covenant to and with the said Elias Johnson and David B. Cox and their executors and administrators that neither the said party of the second part nor his heirs or assigns shall or will at any time hereafter erect or permit upon any part of the said lot any slaughter house, smith shop, forge, furnace, steam engine, brass foundry, nail or other iron factory or any manufactory of gun powder, glue, varnish, vitriol, ink or turpentine or for the tanning, dressing or preparing skins, hides or leather or any brewery, distillery or any other noxious or dangerous trade or business or sell or permit the sale of any intoxicating liquor or drink whatsoever."

It is alleged that plaintiff has been unable to effect a sale of the property as a hospital site for the reason that the prospective pur-- chasers claim that doubt exists whether such a hospital may lawfully be erected in view of the restrictive covenant. The plaintiff says that prospective purchasers fear that, should they attempt to erect such a hospital, proceedings would be instituted to enjoin the erection or to recover damages by reason thereof. Plaintiff has named as defendants some seventy-three owners and persons interested in adjoining property affected by this covenant. In no place in the complaint is it clearly stated that any one of the defendants asserts any claim at the present time. Indeed the contrary is alleged.

The sufficiency of these allegations as a statement of a cause of action for a declaratory judgment is challenged by this appeal. At the outset it must be noted that no controversy exists between plaintiff and these defendants or any of them. No reason is shown for the bringing of the suit and submitting seventy-three defend- ants to the necessity of answering plaintiff's claim, other than the perhaps unfounded apprehension of its purchaser. The covenant in question obviously does not prevent the erection of a hospital as such. A hospital when erected might, because of some special feature or some incident connected with its use, offend against this covenant. We now have no hospital, nor any plans for the one proposed. No one can judge what it will be or how it will be conducted.

Certainly, under such conditions, no effective declaratory judg- ment could be made, assuming that any reasonable basis for such relief was otherwise presented. The court must be convinced before granting a declaratory judgment that it will serve some practical

function by stabilizing disputed legal relations. (*James* v. *Alderton Dock Yards*, 256 N. Y. 298; *Earl of Dysart* v. *Hammerton & Co.*, L. R. [1914] 1 Ch. 822; *Guaranty Trust Co. of N. Y.* v. *Hannay & Co.*, L. R. [1915] 2 K. B. 536.) This complaint in its requirements goes beyond any purpose which the declaratory judgment was designed to effect. The words of DUKE, L. J., in *Matter of Clay* (L. R. [1919] 1 Ch. 66, 78) are peculiarly applicable to the case: " I regard this defendant as a defendant who has done nothing which warranted the petitioners making him a defendant in an action. I do not myself believe that, in the ordinary case of possible controversy between parties, it is open to one of the parties, because he apprehends a claim will be made against him, to serve a writ or other process upon the other party in order to obtain a decision that that claim could not be made. It seems to me to go far beyond anything which has existed in the past history of litigation in this country, and to open up a vista — a great danger — of needless and costly controversy * * *. I am only referring to the grave prospect there is if any citizen who possibly supposes he may have litigation at some future time against him is to be entitled to safeguard himself and set his affairs right by making his supposititious antagonist the defendant to an action. That might tend to keep possible litigants in a very cautious frame of mind; but I do not think it is within the right of the subject to start legal proceedings in such a state of things."

Plaintiff's obvious purpose is to have this court by its judgment in this action reassure its prospective purchaser as to the use for which the property is available. To entertain complaints of this nature would impose upon this court purely advisory functions and extend the scope of a declaratory judgment to a purpose never contemplated.

The order should be reversed, with twenty dollars costs and disbursements, and the motion granted, with ten dollars costs.

FINCH, P. J., MERRELL, O'MALLEY and SHERMAN, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion granted, with ten dollars costs.