JAMES WHELAN et al., Respondents, *v.* JOHN J. O'ROURKE, Individually and as Trustee under a Certain Declaration of Trust, et al., Appellants, et al., Defendant.

First Department, February 4, 1958.

*Henry Weiss* of counsel (*Samuel J. Cohen*, attorney), for appellants.

*Herbert Burstein* of counsel (*Zelby & Burstein* and *Boudin, Cohn & Glickstein*, attorneys), for respondents.

RABIN, J.   This is a declaratory judgment action involving a controversy over the disposition of moneys held in the Local 282 — New York City Trucking Industry Pension Fund (hereinafter referred to as the " Local 282 Fund "), and with respect

to the refunding of certain overpayments made by contributing employers to the Local 282 Welfare Fund as distinguished from the pension fund. The controversy was initiated by the circumstance that in 1953 the International of Local 282 ordered the transfer, effective September 1, 1954, of approximately 1,000 members of Local 282 to Local 807 of the same International. Pursuant to the trust agreement governing the Local 282 Fund, the aforesaid transfer had the effect of terminating any further accrual of benefits thereunder for the employees so transferred.

The plaintiffs-respondents, employer trustees of the Local 282 Fund, proposed that the consequences be avoided by transferring to the Local 807 Fund the sum of $165,108.66 from the Local 282 Fund, said sum representing employer pension contributions to the Local 282 Fund on behalf of the transferred employees plus income thereon and less expenses allocable thereto. Local 807's Fund provides pension rights and benefits identical to those of the Local 282 Fund in all respects here material, and by letter, Local 807 Fund officials specified that for purposes of the Local 807 Fund former members of Local 282 would be treated " on the same basis as if the members had always been members of Local 807 ".

The defendants-appellants, union trustees of the Local 282 Fund, recognized that the former members of Local 282 may withdraw from the Local 282 Fund pension contributions made by such employees, but opposed the proposed transfer of $165,108.66 of pension moneys contributed by the employers. This resulted in a deadlock, and, in accordance with the aforesaid Local 282 Trust Agreement as well as section 186 of title 29 of the United States Code, the matter was duly referred to a neutral arbitrator. The trust agreement provides that the decision of such an arbitrator " shall be final and binding and shall be adopted by the Trustees and deemed to be the vote of the Trustees." Thereafter the arbitrator voted in favor of the transfer urged by respondents. Appellants nevertheless refused to act in compliance with the aforesaid decision, and respondents instituted this declaratory judgment action in which they seek a direction that appellants execute the checks and other instruments necessary to pay over the sum of $165,108.66 to the Local 807 Fund.

The complaint also contains a second cause of action. It concerns itself entirely with the Local 282 Welfare Fund as distinguished from the pension fund. It is brought to implement the unanimous decision of the trustees to repay to the employers the sum of $94,994.70 representing the total amount of welfare

fund overpayments made by the employers. One of the union trustees refused to sign a repayment check until such repayment was judicially declared to be valid, and the second cause of action seeks such a declaration.

Special Term granted respondents' motion for summary judgment on both causes of action.

While the appellants do not dispute the correctness of the order appealed from so far as it pertains to the second cause of action, it appears that there is no dispute between the parties which would give rise to a declaratory judgment action with respect thereto. Both parties agree that the employers are entitled to the overpayment made by them. They also agree on the exact amount to be repaid. Indeed, as stated above, the trustees of the welfare fund unanimously adopted a resolution that the surplus amount be repaid to the contributing employers but withheld payment pending the outcome of this action for a declaratory judgment. There being no dispute between the parties, this court will not entertain the second cause of action. (*Wardrop Co.* v. *Fairfield Gardens,* 237 App. Div. 605.) The courts do not advise parties as to the correctness of their action when the parties have no doubt with regard thereto and when there are no disputes concerning it. (*Wardrop Co.* v. *Fairfield Gardens, supra,* p. 607.) The second cause of action should be dismissed as a matter of discretion and on the law.

With respect to the first cause of action, appellants contend the transfer to the Local 807 Fund to be unauthorized and, therefore, invalid. There is no genuine issue of fact as to the matters hereinbefore set forth, and we would affirm the court below subject to the modification to be indicated.

The aggregate effect of the proposed transfer of funds by the Local 282 Fund and the terms of the acceptance thereof by the Local 807 Fund is to retain intact the pension credits as well as the accrued pension rights of the employees shifted from the jurisdiction of Local 282 to Local 807. Until after the oral argument of the instant appeal, appellants offered no comparable assurance if the Local 282 Fund continued to hold employer pension contributions made on behalf of the shifted men. Subsequent to oral argument, however, appellants, by letter to this court and affidavit, suggested that "the Court may shape its decree so that the reversal of the order appealed from be conditioned upon the preservation of the credits and benefits of the transferred members." It is, therefore, apparently acknowledged by all parties that the proper objective of this suit is to protect against occasioning loss of pension credits or rights because of an intra-union change of jurisdiction. The

Local 282 Fund trustees, pursuant to an appropriate prescribed procedure, have determined upon a particular course for attaining this objective; we are, of course, not at liberty to substitute our judgment for that of the trustees concerning the wisdom of the course selected by the trustees (*Pasternack* v. *Diamond*, 3 A D 2d 422); the only remaining issue is whether that course is incompatible with the trust agreement.

The trust agreement does not precisely contemplate the situation here under review. But it does afford the trustees an arsenal of authority sufficient to comprehend the decision of the arbitrator which constituted "the vote of the Trustees." The trust agreement provides that the "Trustees shall have power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Employees and the Employers." Thereafter the trustees are vested with an exhaustive category of finanical powers concluding with the authority to "do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder." In the exercise of these powers the trustees are insulated by the trust agreement against liability except for "wilful misconduct, bad faith or gross negligence". Indeed, so long as the Local 282 Fund is not diverted from its primary purpose as a welfare and pension plan, the trust agreement "may be amended in any respect from time to time by the Trustees". It was no doubt intended that the trustees possess broad and flexible discretion in the administration of the Local 282 Fund to meet novel contingencies.

When read with due deference to the foregoing structural context of the trust agreement, the provisions governing termination of the trusts afford a sufficient basis for the determination of the trustees. Those provisions specify that upon the termination of the pension trust "the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the said Trust * * * and distribute and apply any remaining surplus in such manner as will, in their opinion, best effectuate the purpose of the said Trust". While the foregoing provisions are apparently in contemplation of the termination of the pension trust in its entirety, they demonstrate that the proposed transfer is consonant with the disposition intended for a closely analogous situation. In the particular circumstances which here obtain, we conclude that the power accorded the trustees to construe and interpret as well as modify and amend the trust agreement included the power to

treat the shift of men from Local 282 to Local 807 as a *pro tanto* termination of that portion of the Local 282 Fund assignable to those men thereby authorizing the trustees to apply, as they did, the surplus thereof " in such manner as will, in their opinion, best effectuate the purpose of the said Trust ".

It must be emphasized that our conclusion here is premised upon the absence of any suggestion by either party that the proposed transfer of pension trust funds would work any loss or impairment of the pension rights, benefits, or credits of the ultimate beneficiaries of the pension plan. We leave open issues concerning the powers of trustees or the rights or standing of such beneficiaries in the event of any such loss or impairment, should such situation arise in future cases. (Cf. *Vanderberg* v. *John Hancock Mut. Life Ins. Co.,* 26 U. S. Law Week 2319 [N. J. Super. Ct., App. Div.]; *Poch* v. *Equitable Life Assur. Soc.,* 343 Pa. 119; *Emerick* v. *Connecticut Gen. Life Ins. Co.,* 120 Conn. 60.) And in order to secure the assurances that the transfer of funds to the Local 807 Fund will cause no such loss or impairment we modify the judgment of the court below to require the following: (1) the preservation of the rights of former Local 282 members transferred to Local 807 to withdraw their respective employee contributions to the Local 282 Fund; and (2) the passage, within 30 days of the entry of the instant order, by the trustees of the Local 807 Fund, of a resolution duly committing the said fund to carry out the terms contained in the letter annexed to the complaint as Exhibit D.

Accordingly, in the discretion of the court, the judgment as to the first cause of action should be modified so as to conform to this opinion, and it should be further modified so as to dismiss the second cause of action as a matter of discretion and on the law; as thus modified, it should be affirmed, without costs.

Settle order.

BREITEL, J. P., VALENTE and McNALLY, JJ., concur.

Judgment appealed from is unanimously modified on the law and in the exercise of discretion in accordance with the opinion of this court, and, as so modified, is affirmed, without costs.

Settle order.